The case is Stevenson v. Capra. Thank you. Mr. Prest. May it please the court, my name is Daniel Perez. I represent Frank Stevenson, the petitioner appellant pursuant to the Criminal Justice Act. What distinguishes this appeal from others like it is that the appellate division specifically held that it was error for the trial court to read the intoxication instruction to the jury over the defense objection. But also harmless. That's correct, Your Honor. Your Honor, it did engage in a harmless analysis and our position is that the error here was structural. While the appellate division did not explain its rationale why it was error for the intoxication instruction to have been read, it is worth reviewing that the intoxication instruction was not even a defense to the top charge of the indictment. The intoxication defense lacked record support. The intoxication defense contradicted the denial defense that Stevenson asserted consistently and clearly throughout the trial. From opening statement to the examination of the witnesses to the summations, the position was the allegations by the complaining witness were simply untrue. The trial court's injection of an intoxication defense which presupposes the actus reus deprived Stevenson of a fair trial. One of the things I'm struggling with in this case, because it's all about our review of the appellate division's determination on this, and we've got the whole overlay of ADEPA. But as you point out, the harmless error standard that was applied by the appellate division is not the constitutional harmless error standard, which then causes me to question whether the merits conclusion that it was error purported to be a constitutional conclusion or whether the state court actually made its determination that it was error was a non-constitutional state law error, in which case the state court never reached the constitutional question that's before us now. And I'm just trying to figure out how to fit these all together. And if we were to defer to the harmless error analysis, what does that mean when they didn't do a federal constitutional harmless error analysis? Your Honor, our position is that the constitutional claim was fairly and squarely presented to the appellate division. Mr. Stevenson didn't need to cite chapter and verse to assert the due process and Sixth Amendment arguments. Excuse me. McCoy hadn't been decided yet, though, right? Your Honor, that's correct, of course. McCoy and, for that matter, Weaver had not been decided. But we have principally relied upon McCaskill and Ferretta, which did predate the appellate division's decision. But didn't the appellate division also rely primarily on state law? I mean, it cited one federal case, I think, and really wasn't based on or related to autonomy or right to control a defense. So I really didn't read it as a federal constitutional decision. Can you point to something I'm overlooking? Judge Carney, the principal case relied upon by Mr. Stevenson in his appellate brief was Degena. And that was a court of appeals decision that, in turn, relied upon not just the Sixth and Fourteenth Amendments, but also Matthews. In fact, it specifically cited Matthews, which involved a defense that was read to a jury over, excuse me, which involved the denial of an entrapment defense that was requested by the defendant. But it relied heavily on Degena, right? I mean, Degena is really the focal point here, and that's a state court decision. It is a state court decision, and our position is that Degena, in turn, is based upon both the Fourteenth Amendment and the Sixth Amendment right, not only to a fair trial, but also for a defendant to chart his own defense. And if you look at Ferretta and McCaskill and Matthews and, for that matter, Johnson, which was, I think, a 1970 case in which the Supreme Court held that a defendant in a rape case where the defense is that it did not happen is nevertheless entitled to a consent instruction. If you look at even Rock v. Arkansas, there is this package of rights that are accorded to a defendant under the Sixth Amendment, and that was fairly and squarely presented to the appellate. And I guess what I'm trying to understand is your position that the finding of error or the conclusion of error by the appeals division was a determination of constitutional error because that's how it was presented, or was it a determination of error under state law? It was absolutely a constitutional determination. It was a determination of constitutional magnitude, and it had to be, because what happened here was how could you possibly have a fair trial? How could you have a trial consistent with the Fourteenth Amendment where the defendant's position throughout is this didn't happen? And over his express objection, the trial court issues that intoxication instruction four times and utters the words intoxicated or intoxicant 12 times. But the constitutional, the Federal constitutional cases involving right to autonomy typically, though, focus on a divergence between counsel and instructions of the client, right? We generally are not talking about the court giving jury instructions. Is that right? Your Honor, we, our position is that taken together, taken collectively, the line of cases from Feretta to McCaskill, which both of which predated the appellate division's decision, to McCoy and Weaver, et cetera, established this right of autonomy. In fact, the right of autonomy, that particular term, the right of autonomy of the accused, is written in McCaskill, which predated the appellate division's. But again, are we still generally talking about a right that's established in the context of a divergence of opinion and strategy between the defendant and his counsel? Our position is that the right is broader than simply that and that those cases stand for the proposition, as I said. Counsel, before your time expires, would you talk to me about the double deference that we're required to pay to the lower court decisions? Our position is that double deference was not appropriate in this case, that there was, the double deference was not appropriate in this case because this was an error of constitutional magnitude. That is our position. So what I'm struggling with, though, is if, in fact, it was a constitutional ruling by the state court, it seems odd that the court would have then applied the harmless error standard that applies for non-constitutional errors under New York law. So that's question one. The question two is even if we accept that it was a constitutional ruling, how do we treat the harmless error review that was done pursuant to the non-constitutional standard? Do we have to conduct our own harmless error analysis under the federal standard? Your Honor, our position, we have steadfastly not argued harmlessness in this appeal. We have argued that this is a structural error under the Sixth and Fourteenth Amendments. You know, in terms of the harmless error, look, this is obviously, this is a difficult case, but it is worth noting that the jury was out for two days. The jury sent out six notes. The jury specifically asked to have the reasonable doubt instruction read to it again. So the jury clearly struggled with this case. And this was, while I obviously was not counsel below, this, the State's case was not overwhelming. The State called as a witness a medical doctor who had not examined the complaining witness. The State called a call-out witness who had not only not examined the complaining witness but also had not even reviewed her testimony. You're telling us the facts that would inform the analysis. I'm just trying to figure out the legal framework, and I think I understand your argument, which is you're not going to mess with what the legal framework is vis-à-vis harmless error because, in your view, it's a structural error, and that ends the conversation. That is our position, Your Honor. Thank you. Thank you. Mr. Cerutti. Good afternoon, Your Honors. Jordan Cerutti for the respondent. First, let's just be clear that defendant is making, petitioner is making two claims, a Sixth Amendment claim and a Fourteenth Amendment claim. The Sixth Amendment claim is unexhausted. The, before the State appellate court, defendant did not cite the Sixth Amendment, did not engage in any constitutional analysis, did not even argue that this intoxication instruction violated his right to choose his own defense. They presented a separate argument to the State appellate division. The defendant argued that the intoxication instruction was errored because there was insufficient evidence of intoxication on the record. Did he object to the trial? Did he object to the giving of the intoxication instruction? That's correct, but not on the same argument that defendant is raising now. Defendant objected to trial to the intoxication instruction because it was ambiguous and, excuse me, because it referred to the defendant's, defendant felt that the intoxication instruction brought attention to defendant's admission to his sister, which defendant separately was arguing should not have been admitted into evidence. So in objecting... No, he said it brought attention to the phone call, but at what point did we, did he realize that he couldn't claim that he was both intoxicated and didn't do it? He must have, that must have come to his attorney or himself early on in the process. Well, defendant never claimed that he was intoxicated. That's correct. He claimed he didn't do it. That's right. And defense counsel at trial fully argued that the crime didn't happen, that he didn't do it. I think it's important to understand the intoxication instruction. The intoxication instruction is not an affirmative defense. It doesn't shift any affirmative burden onto the defendant. It's not even really a defense. Doesn't it go to intent? Excuse me? Intent to commit the crime? Exactly, Your Honor. It's not really even a defense. It negates an element of the State's case, potentially. Intent is, of course, an element of the State's case. Right. And the intoxication instruction is an add-on instruction to the instruction on intent. Why did the government request such a charge? Do you know? Well, there was evidence of defendant's intoxication. The jury heard the defendant's statement to his sister that the drugs made him do it. At what time was he intoxicated from the government's point of view? I mean, I was struck by the vagueness of the statement. Right. And this was the separate argument that defendant made for why the statement shouldn't have been admitted, made relevance argument. Oh, it's too ambiguous. We don't know what he's talking about. That was rejected by the trial court and by the State Appellate Division, and rightly so. I mean, this statement to his sister was made from Rikers Island, Wright Prison, Wright Jail, right after he was arrested for the rape. And he says on the phone, I'm going to admit the truth to my lawyer. First, I'm going to admit it to my family. His sister picks up the phone, and he says, I did something that wasn't right, and the drugs made me do it. So the State courts along the way rightly found that this was not ambiguous. And the intoxication instruction, as Your Honors recognize, is just part of the instruction on intent. So the trial court provided guidance on how to assess the relevance of this statement to his sister and properly apply New York law regarding intent. The trial court did not, in its intoxication instruction, the trial court did not say that defendant was conceding anything, that defendant was arguing intoxication, or that defendant had any affirmative burden. And in fact, the court specifically instructed the jury that its own instructions did not constitute an opinion as to the facts or the verdict. And one of the reasons why this is not clearly a unreasonable application of clearly established Supreme Court laws, because the defendant has not cited and there does not appear to be any clearly established Supreme Court precedent that a correct jury instruction on State law can violate a defendant's right to choose his own defense. But even if there were, that's certainly not the case here. Didn't it counter his desire to put on his own defense? Didn't it attack his whole defense that he didn't do it? No, Your Honor. He couldn't have been both intoxicated enough to do this terrible crime or not intoxicated and he didn't do it. Those were the choices that he wanted to put before the jury. And he wasn't allowed to. He was allowed to. I mean, defense counsel fully argued that the crime did not happen. And the court's intoxication instruction did not limit that defense in any way. I mean, the instruction is not as to a defense. I mean, the instruction even specifically makes clear to the jury under New York law, intoxication is not a defense, and then explains. But if it removes the element of intent, he can't be convicted. Exactly. And there was evidence of defendant's intoxication. And so the court provided guidance on how to properly assess that evidence of intoxication and explained to New York law, this is how intoxication can or cannot affect intent in explaining the intent element of sexual gratification. But again, the court did not limit defendant's defense in any way or shift any affirmative burden to defendant. Can I ask? No, go ahead. This sort of relates to the question I was asking your colleague. If we conclude just hypothetically that giving the instruction was constitutional error, maybe due process, maybe not. But let's assume that we've reached that conclusion and we assume that there's no basis for applying a structural error framework. When we consider whether and how to defer to the state court's determination of harmless error under ADEPA, what do we do with the fact that the state court didn't apply the constitutional harmless error standard? Even if we defer to it, does that resolve the case or would we have to do our own harmless error evaluation? Okay, well, so first the state court found that there was an error under the state law harmless error standard. And defendant did raise a 14th Amendment claim. Therefore, by affirming the judgment, the court was, the appellate division was rejecting that claim on the merits, first off. It did not reject defendant's constitutional 14th Amendment claim. It rejected that on the merits. It did not find that there was constitutional error but was harmless. Even if it had. Right, that's my question. Even if it had found that there was constitutional error but that error was harmless, that would be a merits decision that this court would apply epideference to. Right, and so my question is, what does it mean to apply deference to a harmless error determination that's applied using a standard that doesn't meet the rigor of the federal harmless error standard? Well, I mean, that points out the inconsistentness of defendant's position with the record because the state court. I understand that. So in giving, were this court to give epideference to the state appellate division's harmless error determination had it done that with the constitutional claim, the defendant did not suffer any prejudice in this case. Defendant fully argued their defense, and the court did not limit their defense and did not foist any affirmative burdens on the defendant. Were there any jury questions? Were there any jury questions about the standard or about the instruction? No. There was a jury, the jury made a request to read back all of the charges, you know, for every count. So the entire charge for all of the counts was read back, which, of course, included the intent element and the intoxication instruction element. So the jury read out intoxication four times, twice in the charge and twice in the read back. Is that correct? That's correct. And as part of the intent instruction for the count of sexual abuse and as part of the intent element of the crime of welfare of a child, and then when those two counts were then read back in response to the jury note, the intent instructions were read again. So the jury never specifically asked for the intoxication instruction to be read again. It didn't even specifically ask for the intent instruction to be read again. It just asked for all the instructions to be read again on all of the counts. And the intoxication instruction is wrapped up in the intent instruction. It is part of how to evaluate intent under New York law. It is not a separate defense. It is certainly not an affirmative defense. And there's not a due process in addressing this as a due process 14th Amendment claim. It was not unreasonable for the court to give the intoxication instruction in an exercise of caution to make sure that the jury, having heard this evidence of defendant's intoxication, properly applied New York law. Can I just try? I'm going to try. You're out of time, so I want to try one more time. And if the answer is I don't know, that's an okay answer. Putting aside a factual analysis of whether there was harmless error, if we conclude that the state's harmless error analysis is entitled to deference under ADEPA, and if we make all these other assumptions that you would reject about there being constitutional error in the first place, does that deference resolve our analysis? Or in order to deny the petition or affirm the denial of the petition, do we also need to do our own harmless error analysis, since the most we get from deferring to the state harmless error analysis is there's no significant probability versus reasonable possibility of impacting the outcome? Well, were this court to engage in a harmless error analysis under an unreasonable application of the Chapman standard of was there harmless error beyond a reasonable doubt, which this court would do when addressing a habeas claim, this court would also engage in the Brecht standard of substantial and injurious effect that affected the verdict. So were this court to consider that the appellate division made a constitutional error, harmless error determination, this court would now apply the harmless error standard of both Brecht and Timmerman. I'm sorry, is this not answering your question? Yeah, that's okay. That's okay. Perhaps I don't understand. I apologize. Yeah, no, that's probably my inartful question, but I appreciate you. If my colleagues don't have anything further, I'm fine. Thank you. Then this court should affirm the district court's denial of petitioner's habeas petition. Thank you. Thank you. I have three minutes to make three quick points. The first is that, Judge Pooler, this clearly, the reason that the state requested the intoxication charge was to connect Stevenson's statements to the complainant's allegations, because absent that, there is no connection. All right? There is no question on this record that Stevenson's statements to his sister were not specific in terms of place, date, or time, and that on January 27, 2011, which was the date of the rape, there was no question. The mother and the complaining witness both agreed that Stevenson was not intoxicated. But you're not challenging on appeal the admission or in this habeas petition the admission of that evidence. No. We have to accept that as a given. Yeah, that's correct. Yes, Your Honor. So to come back to my point, that was the reason, and we made this very clear in our papers. The state requested the charge to weaponize it in front of the jury. The state requested the charge so they could stand in front of the jury and say, there is no reason to excuse conduct that didn't happen. He was making an excuse, and you don't make an excuse if nothing happened. And that undermined the core of his denial of defense. And it was also noted by the jury. If the court will look at pages A107 and 108 of our appendix, you'll see that the jury sent out a note asking about the call and had to be instructed on reasonable doubt but how to deal with this call. So clearly, our position is that the instruction drew the jury back to the intoxication issue that defense counsel never even requested. As for the fair presentation of the Sixth Amendment claim, we rely on Carvajal. Our position is that DeGina specifically referred not just to the Sixth Amendment but that Mr. Stevenson's brief itself at page, I want to say A136, specifically relied upon the Fourteenth Amendment to the Constitution, which, of course, because we're in a state court, incorporates the Sixth Amendment. DeGina employed a constitutional analysis, and it alleged a pattern of facts within the mainstream of constitutional litigation. And, Judge Robinson, in terms of the state court decision not making reference to the Sixth Amendment or, for that matter, the Fourteenth Amendment, I don't think that you can be so narrow. Not you, but I don't think that the court can read it quite so narrowly. I think when a defendant advances an argument that specifically cites the Fourteenth and Sixth Amendments, that even if the appellate division didn't specifically mention those arguments, it has impliedly rejected them. Unless the court has any further questions, I'll rest on our papers. Appreciate it. Thank you. Thank you both for your arguments.